IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| In re | ) | Case No. 05-2217 |
| | ) | (Chapter 7) |
| | ) | |
| WILLIAM OWEN FARRIOR, | ) | FINDINGS OF FACT AND |
| | ) | CONCLUSIONS OF LAW |
| Debtor. | ) | |
| | ) | |
| | ) | DATE: February 28, 2006 |
| | ) | TIME: 9:30 a.m. |
| | ) | JUDGE: Hon. Lloyd King |
| | ) | |

**INTRODUCTION**

A hearing was held on February 28, 2006, at 9:30 a.m. before the Honorable Lloyd King on (1) Trustee's Objection to Debtor's Claimed Exemption and (2) Creditor Atlantic National Trust LLC's Objection to Debtor's Claim of Exemption in Stock in Farrwill Enterprises, Inc. David C. Farmer appeared on behalf of Debtor William Owen Farrior (the "Debtor"), who was also present. Ronald K. Kotoshirodo, the Trustee herein (the "Trustee"), appeared on his own behalf. Alan

Jarren Ma appeared on behalf of Creditor Atlantic National Trust LLC, and Ted N. Pettit appeared on behalf of Wendelyne Farrior, the Debtor's wife.

The parties objecting to the Debtor's claimed exemption of stock interests in Farrwill Enterprises, Inc. ("Farrwill"), assert that debtor and his wife do not own the stock as tenants by the entireties.

At the conclusion of the hearing, the matter was submitted for decision. Upon consideration of the evidence presented, the briefs submitted, and the argument of counsel, the court makes the following findings of fact and conclusions of law:

**FINDINGS OF FACT**

1. In his Schedule C, dated September 5, 2005, the Debtor elected the Hawaii state exemptions available under §522(b)(2), including an exemption of stock interests in Farrwill Enterprises, Inc. as property owned as tenants by the entireties, pursuant to Sawada v. Endo, 57 Haw. 608, 613, 561 P.2d 1291 (1977).

2. The Debtor has been married to Wendelyne Jean Pua Farrior for more than thirty years. Debtor's Declaration at ¶ 2.

3. Kathy G. Gumpel ("Gumpel") was an attorney formerly licensed in Hawaii and served as a Farrwill officer. She was also an attorney for the Debtor from 1988 to 1991. Gumpel Declaration at ¶ 2.

4. Farrwill was incorporated in 1982 by three owners, the Debtor, his

father, and his hanai brother, Robert Willis. Exhibit "A" to Debtor's Declaration. For many years, all of their families lived together in the same house. Debtor's Declaration at ¶ 3. The Debtor's father had one share, and Mr. Willis and the Debtor each had two shares. The Debtor does not know whether any stock certificates were ever issued. Debtor's Declaration at ¶ 4.

5. The Articles of Incorporation were amended in 1992 to provide for a total of 1000 shares among the parties, in the same proportion of ownership. Exhibit "B" to and ¶ 5 of the Debtor's Declaration.

6. In approximately 1988, the Debtor acquired title to the property on Apiki Street, which is the sole asset of Farrwill, in lieu of real estate commissions for the sale of adjacent properties. Later, the Debtor deeded this property to Farrwill as a means of settling up a variety of mutual obligations arising from various other transactions among the three parties. Debtor's Declaration at ¶ 6. Since that time, the sole asset of the corporation has been an empty lot that has not been developed because it was intended to be the site of a multi-family home for all of the parties. Debtor's Declaration at ¶ 7.

7. In 1997, the parties agreed to change their form of ownership in Farrwill from that of the three men individually to that of the three couples, each couple as tenants by the entirety. The three couples were:

    a. Colonel William Owen Farrior and his wife Ruth Cambridge

U.S. Bankruptcy Court - Hawaii #05-02217 Dkt # 75 Filed 04/10/06 Page 3 of 10

Farrior, the parents of the Debtor;

        b.      The Debtor and his wife Wendelyne Jean Pua Farrior; and

        c.      Robert Edward Willis and his wife Rudora F. Willis.

Gumpel Declaration at ¶ 3. Ownership transactions were recorded on the corporate record, which was kept by the Debtor's father. Debtor's Declaration at ¶ 8 and Exhibits "C" and "D" attached thereto. Also in evidence are State of Hawaii filings for Farrwill for the years 2004 and 2005, indicating their tenancy by the entireties ownership of the shares, which is consistent with the corporate record and the claimed exemption. Gumpel Declaration at ¶ 5 Exhibits "B" and "C" attached thereto.

    8.    Title to the other properties shown in the Debtor's Schedules, as well as properties that were sold in the meantime, was transferred to the Debtor and his wife as tenants by the entireties at some time in 1997. The family checking account has been held as tenants by the entirety since that time. Debtor's Declaration at ¶ 8.

    9.    Farrwill was managed informally by people who were close family members and who were in daily contact with each other, even when they all no longer shared the same residence. It was one of several investments made by the three couples over twenty to thirty years.

    10.    During the twenty or thirty years of joint investing by these couples, all decisions and work done in connection with the investments were done by the

U.S. Bankruptcy Court - Hawaii  #05-02217  Dkt # 75  Filed 04/10/06  Page 4 of 10

three husbands. None of the wives ever participated in the businesses the men engaged in, except that the Debtor's mother Ruth Cambridge Farrior was often included in title and on mortgages. Gumpel Declaration at ¶ 4.

11. Until Debtor's father's death in January 2000, Mr. and Mrs. Willis paid the real property taxes for the lot on behalf of the otherwise inactive corporation. Upon dissolution of the Farrior/Willis relationship in 2004, the payment of the real property taxes was treated as the Willises' capital contribution. Debtor's Declaration at ¶ 10.

12. Prior to his father's death, the Debtor's parents conveyed one-half of their interest (100 of 200 shares) in Farrwill to Debtor and his wife, as tenants by the entirety. Debtor's Declaration at ¶ 11. Following his father's death, his mother conveyed her remaining interest in the corporation to the Debtor and his wife, also as tenants by the entirety. Debtor's Declaration at ¶ 12.

13. During the last several years of their relationship, Col. Farrior, the Debtor, and Mr. Willis had increasing difficulty communicating over their joint assets and obligations. Gumpel Declaration at ¶ 7.

14. Upon Col. Farrior's death at the beginning of 2000, communication between the younger Farriors and the Willises ceased altogether. The Farriors found it impossible to carry on without any input or contributions from their co-

5

owners. The only solution was to attempt to liquidate the assets and dissolve Farrwill. Debtor's Declaration at ¶ 12; Gumpel Declaration at ¶ 8.

15. In consultation with the attorney for the Debtor and Farrwill, it was determined that a meeting of shareholders of Farrwill would be called to allow the directors to authorize the sale of the land owned by Farrwill and to attempt to provoke a response of any sort from Mr. and Mrs. Willis. Proper notice was given to the Willises and their attorney. Gumpel Declaration at ¶ 9.

16. At the shareholders' meeting held in the office of corporate counsel on March 16, 2001, the sale of the property was authorized by the owners of 60% of the corporation, although no sale ever took place. Gumpel Declaration at ¶ 10 and Exhibits "D" and "E." In discussing the distribution of anticipated proceeds, the minutes referred only to the husbands of the couples, since they were the members of the marital communities who actually participated in management, plus the widow on whose behalf the Debtor was acting. Ruth Cambridge Farrior was quite ill and died a few days after this meeting. Gumpel Declaration at ¶ 11.

17. Wendelyne Farrior was not present at the meeting, did not sign the minutes, and did not consent to give up her marital estate interest in the property. Gumpel Declaration at ¶ 10.

18. The financial ties between Debtor and his wife, on the one hand, with

6

Mr. and Mrs. Willis, on the other, were finally dissolved by agreement in 2004. Pursuant to that agreement, the Willises gave up their interest in Farrwill, and Debtor and his wife paid $135,000 to the Willises. Debtor Declaration at ¶ 13.

19. Since no share certificates had been seen by the Farriors or Gumpel during the several years of managing the property, and because cooperation from the Willises was severely limited, it was anticipated that no share certificates would in fact be surrendered. However, the corporation did cancel the Willises' outstanding shares in Farrwill. Gumpel Declaration at ¶ 16 and Exhibit "F."

20. A "Mutual Release and Indemnity From Liability Upon Claims" was prepared by counsel for Debtor and his wife and for the Willises. Gumpel Declaration at ¶ 17 and Exhibit "G."

21. The source of the $135,000 was a mortgage on tenancy by the entirety property owned by the Debtor and his wife. They are both liable on that mortgage. Debtor's Declaration at ¶ 14.

22. The dissolution agreement called for Mr. and Mrs. Willis to surrender any stock certificates in the corporation they might have. Debtor's Declaration at ¶ 15.

23. The Debtor has diligently searched his father's records and papers to see whether he had possession of any stock certificates for this corporation. He has

7

been unable to locate any and does not recall ever seeing any. Debtor's Declaration at ¶ 16.

24. Farrwill has never issued share certificates.

25. Ownership of Debtor's and Wendelyne Farrior's interests in Farrwill has not changed since it was placed in tenancy by the entireties in 1997. Debtor's Declaration at ¶ 18.

26. As shown on the Debtor's Schedule "C" filed herein, the Debtor holds virtually all of the Debtor's property as tenants by the entireties with his wife.

**CONCLUSIONS OF LAW**

1. A claimed exemption is presumptively valid. 11 U.S.C. § 522(l).

2. An objecting party therefore has the burden to prove that the exemption is not properly claimed. Fed. R. Bankr. P. 4003(c). Initially, this means that the objecting party has the burden of production and the burden of persuasion to rebut the presumptively valid exemption. In re Lester, 141 B.R. 157, 161 (S.D. Ohio 1991).

3. Pursuant to Hawaii Revised Statutes §§ 509-1 and 509-2, there must be a manifest intent to create tenancy by the entirety.

4. This requirement has been extended to the general intentions of the parties. "[A]lthough a tenancy by the entirety can exist in personal property, it must manifestly appear that the spouses intended to create such an estate." Traders

8

U.S. Bankruptcy Court - Hawaii #05-02217 Dkt # 75 Filed 04/10/06 Page 8 of 10

Travel Int'l v. Howser, 69 Haw. 609, 613, 753 P.2d 244, 246 (1988) (citing In re Estate of Au, 59 Haw. 474, 583 P.2d 966 (1978) and H.R.S. §§ 509-1 and 509-2 (1985)).

5. The Hawaii Business Corporation Act, H.R.S. § 414-3, defines "shares" simply as "the units into which the proprietary interests in a corporation are divided." Shares are not certificates, nor are certificates dispositive evidence of stock ownership.

6. In this case, the following establish and are consistent with the Farriors' manifest intention to hold the Farwill stock as tenants by the entireties:

    a. the stock ledger of Farrwill,

    b. the facts recited in the Gumpel Declaration,

    c. Farrwill 2004 and 2005 Annual Reports filed with the State of Hawaii Department of Commerce and Consumer Affairs, and

    d. Mutual Release dated August 11, 2004, between the Debtor and his wife and Robert and Eudora Willis.

7. The interest of Wendelyne Farrior, as a tenant by the entireties, in the Farrwill stock is sufficiently well established. Debtor, alone, could not convey the Farrwill shares, free and clear of his wife's interests.

8. The parties have never seen any stock certificates, but none are necessary, given the often informal conduct of the affairs of close corporations.

U.S. Bankruptcy Court - Hawaii #05-02217 Dkt # 75 Filed 04/10/06 Page 9 of 10

9. Accordingly, manifest intent has been established, and the exemption is properly claimed.

An order will be entered, determining that the objections of the Trustee and Atlantic National Trust LLC are overruled.

DATED: Honolulu, Hawaii, April 10, 2006.

Lloyd King
United States Bankruptcy Judge